# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br>**Stephen J. Anderson and**<br>**Melanie Anderson,**<br><br>Debtors. | **Bankruptcy Case**<br>**No. 15-40878-JMM** |
| **Gary L. Rainsdon, Trustee,**<br><br>Plaintiff,<br><br>vs.<br><br>**Stephen J. Anderson and**<br>**Melanie Anderson,**<br><br>Defendants. | **Adv. Proceeding**<br>**No. 17-08046-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

Jason R. Naess, PARSON, SMITH, STONE, LOVELAND & SHIRLEY, LLP, Burley, Idaho, Attorney for Plaintiff.

Aaron J. Tolson, TOLSON & WAYMENT, PLLC, Idaho Falls,

MEMORANDUM OF DECISION – 1

Idaho, Attorney for Defendants.

*Introduction*

In this adversary proceeding, chapter 7[1] trustee Gary L. Rainsdon ("Trustee") asks the Court to revoke the discharge entered in their bankruptcy case in favor of debtors Stephen J. Anderson and Melanie Anderson ("Debtors"). Dkt. No. 1. The Court conducted a trial at which the parties offered evidence and testimony, post-trial briefing was submitted in lieu of closing arguments, and the issues were taken under advisement. Dkt. Nos. 18, 21-23. Having considered the evidence, the parties' arguments, and the applicable law, this Memorandum sets forth the Court's findings of fact, conclusions of law, and decision. Fed. R. Bankr. P. 7052; 9014.

*Facts*[2]

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2] These facts, in part, incorporate undisputed facts presented to the Court in connection with deciding Trustee's motion for turnover in the underlying bankruptcy case, *In re Anderson*, No. 15-40878-JMM. Bk. Dkt. No. 70.

MEMORANDUM OF DECISION – 2

Debtors worked as licensed Idaho real estate agents.  Their compensation was subject to a somewhat complicated arrangement with the others with whom they worked.

When Debtors arranged a sale of real estate for clients, they earned a commission.  The commissions were paid directly to Keller Williams, the broker with whom Debtors were associated.  Under their contractual arrangement, the broker retained a percentage of Debtors' commissions, subject to a "cap" each year.  After subtracting the amount to be applied to Debtors' commission cap, the broker would issue two checks splitting the balance of the commission between Debtors and their "team leader", Mike Hicks, according to a predetermined formula.  Debtors' portion of the commissions were paid to their wholly-owned corporation, Bastille Enterprises, Inc., which then, in turn, paid Debtors a salary.

On September 9, 2015, the date Debtors filed a chapter 7 petition, Debtors were involved in thirteen real estate transactions for their clients that were "in process," meaning that a real estate sales contract had been executed by the buyer and seller, but the sale had yet to close.  After

MEMORANDUM OF DECISION – 3

Debtors expended varying amounts of time and effort, each of these sales eventually closed, and the commissions were paid out to them according to the arrangements discussed above. In other words, after filing for bankruptcy, Debtors received a significant amount of commission income based upon sales they helped negotiate prior to their filing.

On November 4, 2015, through an email to their attorney, Trustee sought information from Debtors about all "real estate deals pending/in the works at the time of the bankruptcy filing, and update of closing status." Ex. No. 117. On November 9, 2015, Debtors' counsel responded to Trustee as follows: "The Anderson's [sic] are in real estate, but at the time of the filing, they were owed no commissions that had not already been paid. The work they are doing now is for current personal services." Ex. 118. Trustee testified that an "interested party" later alerted him that Debtors, in fact, were acting as realtors for clients concerning sales pending at the time of the bankruptcy filing.[3]

---

[3] Perhaps in response to this information, Trustee filed a motion to delay the entry of discharge on December 11, 2015, Bk. Dkt. No. 24; the motion was granted by the Court that same day in an order providing that Trustee would

MEMORANDUM OF DECISION – 4

Trustee contacted Debtors' counsel by telephone during the first week of December, 2015, and asked that Debtors turn over any funds received from the pre-petition sales that closed after the bankruptcy filing. On December 31, 2015, Debtors' counsel forwarded to Trustee information received by Debtors from the broker about the sales, including the contract dates, closing dates, and commissions paid for the transactions pending at the time of the filing. Ex. 119. These sales all had closed in September or October 2015. *Id*.

On February 5, 2016, Debtors, Trustee, and their attorneys participated in an informal telephone conference. They discussed each of the transactions that was pending on the bankruptcy filing date but had since closed.[4]

On April 6, 2016, Trustee filed a motion with the Court seeking

---

have until February 15, 2016, to object to discharge. Bk. Dkt. No. 25. No objection to discharge was filed by Trustee, and the discharge was entered on December 2, 2016. Bk. Dkt. No. 100.

[4] One of the pending sales closed on March 31, 2016, after the parties' call. Ex. 120.

MEMORANDUM OF DECISION – 5

turnover of the real estate commissions that had been paid post-petition to Debtors' corporation, Bastille. Bk. Dkt. No. 43. Following an evidentiary hearing, on September 16, 2016, the Court entered a Memorandum Decision in which it held that the commissions were property of Debtors' bankruptcy estate under § 541(a), and an Order Granting Trustee's Motion for Turnover ("Turnover Order"), requiring Debtors to turn over $52,485.92 to Trustee. Ex. 101. A copy of the Turnover Order was mailed to Debtors by the Clerk on September 18, 2016. Bk. Dkt. No. 72.

Debtors appealed the Turnover Order to the Ninth Circuit Bankruptcy Appellate Panel ("BAP") on September 30, 2016. Ex. 102. The same day, Debtors also filed a motion to stay execution of the Court's Turnover Order. Ex. 102. After a hearing, the stay motion was denied on October 11, 2016. Ex. 103.

On March 1, 2017, during the pendency of the BAP appeal, Trustee's counsel sent a letter to Debtors' counsel inquiring whether Debtors intended to comply with the Turnover Order. Ex. 104. On March 23, 2017, a follow up letter was sent to Debtors' counsel, again seeking their

MEMORANDUM OF DECISION – 6

proposal about how they would pay the funds to Trustee, but this time, warning Debtors that, if no payment was received within two weeks, Trustee would seek revocation[5] of their discharge for failure to obey the Turnover Order. Ex. 105. Debtors' lawyer responded, indicating that, because most the sales in which Debtors were then acting as realtors would occur between April and June, they would seek a stay from the BAP if Trustee could not offer them more time to pay over the funds. Ex. 106.

On April 3, 2017, Trustee's counsel again contacted Debtors' attorney seeking payment, and on April 6, 2017, Debtors' counsel responded with a proposal that Debtors pay $200 per month to Trustee. Ex. 107. This offer was not acceptable to Trustee, who, through counsel, informed Debtors on April 7, 2017, that he wanted at least half of the amount ordered to be turned over "within the next week," and would allow thirty days for Debtors to pay the remaining balance. Ex. 108. Five

---

[5] To be precise, the letter references Trustee's intent to pursue an adversary proceeding seeking "denial" of Debtors' discharge. But by March 23, 2017, the discharge had already been entered.

MEMORANDUM OF DECISION – 7

days later, on April 12, Debtors' counsel informed Trustee that they were attempting to get a loan, and would let Trustee know more later that week. Ex. 109.

On April 14, 2017, Debtors filed a motion for stay of the Turnover Order pending the appeal at the BAP; the motion was denied by the BAP on April 18, 2017. BAP No. ID-16-1316-JuFB, Dkt. Nos. 13, 14. On April 25, 2017, nearly two weeks later, Trustee's counsel informed Debtors' lawyer that, absent a May 3 payment of half of the funds in question, Trustee would commence a § 727(d) adversary proceeding against them. Ex. 110. Debtors responded that they had a real estate deal in the works and asked for additional time for it to close so they could pay Trustee. *Id*.

While Debtors did not pay Trustee, he did not file an adversary proceeding. Then, on August 11, 2017, the BAP affirmed the Turnover Order. Bk. Dkt. No. 128. On August 14, 2017, Trustee's counsel emailed Debtors' counsel and set August 28, 2017, as their deadline to turn over the amount in the Turnover Order, or an action seeking revocation of Debtors' discharge would be filed. Ex. 111. On August 29, 2017, Debtors counsel

MEMORANDUM OF DECISION – 8

indicated that Debtors wanted to appeal the BAP's decision, and they intended to obtain a bond to protect Trustee if the appeal was unsuccessful.  Exs. 112, 113.

Debtors appealed the BAP's decision to the Ninth Circuit Court of Appeals on October 10, 2017.  Bk. Dkt. No. 131.  While Debtors completed a bond application, Ex. 116, on November 29, 2017, their application was denied because they did not meet the necessary financial qualifications.  Ex. 202.

On November 7, 2017, Trustee filed this adversary proceeding.  Dkt. No. 1.  While Debtors never made any payments to Trustee to satisfy the Turnover Order, even at the trial of this action on February 27, 2018, they continued to insist they intended to seek a stay from the Ninth Circuit.  They never did so.  On March 1, Debtors' appeal of the Turnover Order was dismissed by the Ninth Circuit as untimely filed.  Dkt. No. 28.

Simply put, Debtors have consistently insisted that the commissions in question were not property of the bankruptcy estate and that turnover of these funds was wrongly sought by Trustee and ordered by the Court.

MEMORANDUM OF DECISION – 9

While they appealed the Turnover Order, Debtors never obtained a stay of that order from the appellate courts while their appeals were pending, nor did they make any payments to Trustee. This action, and the severe consequences explained in this decision, are the results of Debtors' questionable conduct.

### 1. *Applicable Law*

In a chapter 7 case, a debtor can receive a discharge of debts unless that debtor engages in one of the acts or omissions listed in § 727(a). In this action, Trustee alleges that Debtors violated § 727(a)(6)(A), which provides that a debtor may not receive a discharge if:

> (6) the debtor has refused, in the case –
>     (A) to obey any lawful order of the court,
>         other than an order to respond to a
>         material question or to testify[.]

Here, Debtors received a discharge despite their failure to obey the Turnover Order. However, a trustee may request that a discharge be revoked if the trustee proves that a debtor "committed an act specified in subsection (a)(6) of [§ 727]." § 727(d)(3); *Rainsdon v. Anderson (In re*

MEMORANDUM OF DECISION – 10

*Anderson)*, 526 B.R. 821, 825 (Bankr. D. Idaho 2015).

For purposes of § 727(a)(6), a bankruptcy court's order is "lawful" if the court had jurisdiction over the subject matter, and jurisdiction over the person to whom the order is directed. *Id*. at 825-26 (citing *Rainsdon v. Leiser (In re Leiser)*, 2014 WL 3548929, at *3-4 (Bankr. D. Idaho 2014)). Here, Debtors have not argued that the Turnover Order, while alleged to be erroneous, was not lawful. The Court clearly had subject matter and personal jurisdiction to order Debtors, the persons who commenced this chapter 7 bankruptcy case, to turn over their assets to Trustee for administration. *See* 28 U.S.C. § 1334(a) and § 157(a)(2)(a), (e).

"[Any] claim for denial of discharge under § 727 is construed liberally and in favor of the discharge and strictly against a person objecting to the discharge." *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986)); *United States Trustee v. Hymas (In re Hymas)*, 10.4 IBCR 114, 119 (Bankr. D. Idaho 2010) (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)). The party seeking to revoke a

MEMORANDUM OF DECISION – 11

debtor's discharge bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289 (1991); *Searles v. Riley (In re Searles)*, 317 B.R. 368, 376 (9th Cir. BAP 2004), *aff'd.*, 212 Fed. Appx. 589 (9th Cir. 2006); *In re Anderson*, 526 B.R. at 826. Once a trustee produces sufficient evidence to show a basis to revoke a debtor's discharge under § 727(a), the burden shifts to the debtor to show why the discharge should not be revoked. *Gugino v. Clark (In re Clark)*, 525 B.R. 442, 463 (Bankr. D. Idaho 2015) (citing *Gugino v. Cardenas (In re Cardenas)*, 2011 WL 3510941, at *2 (Bankr. D. Idaho Aug. 10, 2011)).

A trustee seeking to revoke a discharge pursuant to §§ 727(d)(3) and (a)(6)(A) must show that the debtor (a) was aware of the order; and (b) willfully or intentionally refused to obey the order (i.e., something more than a mere failure to obey the order through inadvertence, mistake or inability to comply). *In re Anderson*, 526 B.R. at 826 (citing *Schwarzkopf v. Goodrich (In re Michaels)*, 2009 WL 7809926, at *5 (9th Cir. BAP Feb. 27, 2009) (citing *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 434 (4th Cir. 2008))); *see also U.S. Trustee v. Lebbos (In re Lebbos)*, 439 B.R. 154, 164–65 (E.D. Cal.

MEMORANDUM OF DECISION – 12

2010), *aff'd*, 529 Fed.Appx. 854 (9th Cir. 2013) (citing *In re Jordan*, 521 F.3d at 433–434).  However, to revoke a discharge, a trustee is not required to prove that the debtor acted with malicious intent, or that the debtor set out with the design to ignore and violate the bankruptcy court's order.  *In re Clark*, 525 B.R. at 464 (citing *In re Michaels*, 2009 WL 7809926, at *7 (noting that motive is not a consideration)). In the final analysis, it is "totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge."  *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985).

### 2. *Discussion of the Issues*

Should Debtors' failure in this case to obey the Turnover Order cost them their discharge under these facts?

There is no question that Debtors were aware of the Court's Turnover Order directing them to turn over to Trustee the amount of the post-petition commissions they received.  Perhaps this is best evidenced by the fact that they appealed the entry of the Turnover Order to the BAP, and after receiving an unfavorable decision there, attempted a further

MEMORANDUM OF DECISION – 13

appeal to the Ninth Circuit. They also sought a stay of the Turnover Order pending appeal from this Court and the BAP, but those requests were denied. As such, Debtors' awareness of the Turnover Order, and their obligations under it, is beyond question.

Trustee must also demonstrate under § 727(a)(6) that Debtors willfully or intentionally refused to obey the Turnover Order. Here, Trustee notified Debtors as early as December 2015, that he expected any payments they received for acting as realtors in any sales pending on the date they filed their bankruptcy petition be turned over to him. While the Court appreciates that Debtors disagreed with Trustee's view of the law, and had incurred business and personal expenses in their real estate business, it clearly appears that Debtors received and spent the disputed commissions they received post-bankruptcy without resolving Trustee's claims to them. Instead, throughout the pendency of the parties' dispute, Debtors seemingly sought to delay and stall their compliance with Trustee's demands and the Turnover Order, instead indicating their intent was to seek a stay from the BAP of the Court's unfavorable decision,

MEMORANDUM OF DECISION – 14

which was denied, to get to the heart of the real estate season, to seek a loan, to close a big real estate deal, and finally, to appeal the Turnover Order to, and supposedly to seek a stay from, the Ninth Circuit. When all else failed, they offered Trustee only $200 per month in payments to satisfy the Turnover Order, a proposal that would require nearly 20 years for them to complete.

At trial, Debtors' excuse for not at least attempting to comply with the Turnover Order was their insistence that Trustee would accept only the full amount due from them. But the trial exhibits cast doubt on that testimony, as the evidence and documentary exhibits show that, repeatedly over more than a year, Trustee sought payment proposals from Debtors, and eventually offered to allow them to pay half of the amount in the Turnover Order, with the remainder due in thirty days. Trustee testified that he tried to accommodate Debtors' supposed plans: to obtain a loan, to wait for their busy sales season, to close on a large real estate deal, and to seek a stay and bond pending appeal. Indeed, if Trustee can be criticized at all, it is perhaps that he was too patient with Debtors'

MEMORANDUM OF DECISION – 15

approach to simply not comply with an order that they considered erroneously entered. Recall, the Court issued its order in September 2016, and Trustee did not commence this adversary proceeding until November 2017, over a year later and after giving Debtors numerous warnings about the potential consequences of not turning over the funds. All things considered, the Court finds that Trustee has met his burden of showing that Debtors willfully or intentionally refused to obey the Turnover Order.

Though Trustee satisfied his burden or proof, Debtors have not demonstrated why their discharge should not be revoked. At trial, they testified about Mr. Anderson's health concerns, family challenges, and the unpredictable nature of the real estate business. But the proof shows that the Bastille bank account, the source of Debtors' income during relevant times, was often flush with cash; indeed, it held nearly $25,000 on the date the Turnover Order was entered, and over $36,000 the following month. Exs. 121, 122. While the Court credits Debtors' explanation that perhaps some of these funds were necessary to operate their business and pay their salaries, this excuse falls short in light of their failure to make *any*

MEMORANDUM OF DECISION – 16

payments to Trustee at all.

*Conclusion*

Debtors who avail themselves of the many benefits and protections of chapter 7 have corresponding duties, including the obligation to "surrender to the trustee all property of the estate." § 521(a)(4). Debtors in a bankruptcy case are statutorily bound to deliver property of the estate, and to account for such property, under § 542(a), and to "cooperate with the trustee . . . in the administration of the bankruptcy estate. Rule 4002(a)(4). In this case, Debtors intentionally and willfully disregarded their duty to obey a lawful order of this Court, presumably because they believed it was improper. When the evidence is viewed fairly, Trustee has shown that Debtors were aware of the Turnover Order, and that Debtors willfully and intentionally refused to obey it. Debtors have not offered adequate reasons to justify their disobedience. Revocation of Debtors' discharge is the appropriate consequence for their conduct.

Counsel for Trustee shall submit a form of judgment for entry by the

MEMORANDUM OF DECISION – 17

Court. Counsel for Debtors shall approve the form of judgment.

Dated: April 30, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 18