## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

---

| | |
|---|---|
| **In Re:** **Stephen J. Anderson and** **Melanie Anderson,** <br><br>         **Debtors.** | **Bankruptcy Case** **No. 15-40878-JMM** |
| **Gary L. Rainsdon, Trustee,** <br><br>         **Plaintiff,** <br><br> **vs.** <br><br> **Stephen J. Anderson and** **Melanie Anderson,** <br><br>         **Defendants.** | **Adv. Proceeding** **No. 17-08046-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

Jason R. Naess, PARSON, SMITH, STONE, LOVELAND & SHIRLEY, LLP, Burley, Idaho, Attorney for Plaintiff.

Aaron J. Tolson, TOLSON & WAYMENT, PLLC, Idaho Falls, Idaho, Attorney for Defendants.

MEMORANDUM OF DECISION – 1

*Introduction*

In this adversary proceeding, chapter 7[1] trustee Gary L. Rainsdon

("Trustee") asks the Court to revoke the discharge entered in their

bankruptcy case in favor of  debtors Stephen J. Anderson and Melanie

Anderson ("Debtors").  Dkt. No. 1.  The Court conducted a trial at which

the parties offered evidence and testimony, post-trial briefing was

submitted in lieu of closing arguments, and the issues were taken under

advisement.  Dkt. Nos. 18, 21-23.  Having considered the evidence, the

parties' arguments, and the applicable law, this Memorandum sets forth

the Court's findings of fact, conclusions of law, and decision.  Fed. R.

Bankr. P. 7052; 9014.

*Facts*[2]

Debtors worked as licensed Idaho real estate agents.  Their

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2]  These facts, in part, incorporate undisputed facts presented to the Court
in connection with deciding Trustee's motion for turnover in the underlying
bankruptcy case, *In re Anderson*, No. 15-40878-JMM.  Bk. Dkt. No. 70.

MEMORANDUM OF DECISION – 2

compensation was subject to a somewhat complicated arrangement with the others with whom they worked.

When Debtors arranged a sale of real estate for clients, they earned a commission.  The commissions were paid directly to Keller Williams, the broker with whom Debtors were associated.  Under their contractual arrangement, the broker retained a percentage of Debtors' commissions, subject to a "cap" each year.  After subtracting the amount to be applied to Debtors' commission cap, the broker would issue two checks splitting the balance of the commission between Debtors and their "team leader", Mike Hicks, according to a predetermined formula.  Debtors' portion of the commissions were paid to their wholly-owned corporation, Bastille Enterprises, Inc., which then, in turn, paid Debtors a salary.

On September 9, 2015, the date Debtors filed a chapter 7 petition, Debtors were involved in thirteen real estate transactions for their clients that were "in process," meaning that a real estate sales contract had been executed by the buyer and seller, but the sale had yet to close.  After Debtors expended varying amounts of time and effort, each of these sales

MEMORANDUM OF DECISION – 3

eventually closed, and the commissions were paid out to them according to the arrangements discussed above.  In other words, after filing for bankruptcy, Debtors received a significant amount of commission income based upon sales they helped negotiate prior to their filing.

On November 4, 2015, through an email to their attorney, Trustee sought information from Debtors about all "real estate deals pending/in the works at the time of the bankruptcy filing, and update of closing status."  Ex. No. 117.  On November 9, 2015, Debtors' counsel responded to Trustee as follows:  "The Anderson's [sic] are in real estate, but at the time of the filing, they were owed no commissions that had not already been paid.  The work they are doing now is for current personal services." Ex. 118.  Trustee testified that an "interested party" later alerted him that Debtors, in fact, were acting as realtors for clients concerning sales pending at the time of the bankruptcy filing.[3]

---

[3] Perhaps in response to this information, Trustee filed a motion to delay the entry of discharge on December 11, 2015, Bk. Dkt. No. 24; the motion was granted by the Court that same day in an order providing that Trustee would have until February 15, 2016, to object to discharge.  Bk. Dkt. No. 25.  No objection to discharge was filed by Trustee, and the discharge was entered on

MEMORANDUM OF DECISION – 4

Trustee contacted Debtors' counsel by telephone during the first

week of December, 2015, and asked that Debtors turn over any funds

received from the pre-petition sales that closed after the bankruptcy filing.

On December 31, 2015, Debtors' counsel forwarded to Trustee information

received by Debtors from the broker about the sales, including the contract

dates, closing dates, and commissions paid for the transactions pending at

the time of the filing.  Ex. 119.  These sales all had closed in September or

October 2015.  *Id*.

On February 5, 2016, Debtors, Trustee, and their attorneys

participated in an informal telephone conference.  They discussed each of

the transactions that was pending on the bankruptcy filing date but had

since closed.[4]

On April 6, 2016, Trustee filed a motion with the Court seeking

turnover of the real estate commissions that had been paid post-petition to

---

December 2, 2016.  Bk. Dkt. No. 100.

[4]  One of the pending sales closed on March 31, 2016, after the parties'
call.  Ex. 120.

MEMORANDUM OF DECISION – 5

Debtors' corporation, Bastille.  Bk. Dkt. No. 43.  Following an evidentiary

hearing, on September 16, 2016, the Court entered a Memorandum

Decision in which it held that the commissions were property of Debtors'

bankruptcy estate under § 541(a), and an Order Granting Trustee's Motion

for Turnover ("Turnover Order"), requiring Debtors to turn over

$52,485.92 to Trustee.  Ex. 101.  A copy of the Turnover Order was mailed

to Debtors by the Clerk on September 18, 2016.  Bk. Dkt. No. 72.

Debtors appealed the Turnover Order to the Ninth Circuit

Bankruptcy Appellate Panel ("BAP") on September 30, 2016.  Ex. 102.  The

same day, Debtors also filed a motion to stay execution of the Court's

Turnover Order.  Ex. 102.  After a hearing, the stay motion was denied on

October 11, 2016.  Ex. 103.

On March 1, 2017, during the pendency of the BAP appeal, Trustee's

counsel sent a letter to Debtors' counsel inquiring whether Debtors

intended to comply with the Turnover Order.  Ex. 104.  On March 23,

2017, a follow up letter was sent to Debtors' counsel, again seeking their

proposal about how they would pay the funds to Trustee, but this time,

MEMORANDUM OF DECISION – 6

warning Debtors that, if no payment was received within two weeks,

Trustee would seek revocation[5] of their discharge for failure to obey the

Turnover Order.  Ex. 105.  Debtors' lawyer responded, indicating that,

because most the sales in which Debtors were then acting as realtors

would occur between April and June, they would seek a stay from the

BAP if Trustee could not offer them more time to pay over the funds.  Ex.

106.

On April 3, 2017, Trustee's counsel again contacted Debtors'

attorney seeking payment, and on April 6, 2017, Debtors' counsel

responded with a proposal that Debtors pay $200 per month to Trustee.

Ex. 107.  This offer was not acceptable to Trustee, who, through counsel,

informed Debtors on April 7, 2017, that he wanted at least half of the

amount ordered to be turned over "within the next week," and would

allow thirty days for Debtors to pay the remaining balance.  Ex. 108.  Five

days later, on April 12, Debtors' counsel informed Trustee that they were

---

[5] To be precise, the letter references Trustee's intent to pursue an
adversary proceeding seeking "denial" of Debtors' discharge.  But by March 23,
2017, the discharge had already been entered.

MEMORANDUM OF DECISION – 7

attempting to get a loan, and would let Trustee know more later that week.  Ex. 109.

On April 14, 2017, Debtors filed a motion for stay of the Turnover Order pending the appeal at the BAP; the motion was denied by the BAP on April 18, 2017.  BAP No. ID-16-1316-JuFB, Dkt. Nos. 13, 14.  On April 25, 2017, nearly two weeks later, Trustee's counsel informed Debtors' lawyer that, absent a May 3 payment of half of the funds in question, Trustee would commence a § 727(d) adversary proceeding against them.  Ex. 110.  Debtors responded that they had a real estate deal in the works and asked for additional time for it to close so they could pay Trustee.  *Id*.

While Debtors did not pay Trustee, he did not file an adversary proceeding.  Then, on August 11, 2017, the BAP affirmed the Turnover Order.  Bk. Dkt. No. 128.  On August 14, 2017, Trustee's counsel emailed Debtors' counsel and set August 28, 2017, as their deadline to turn over the amount in the Turnover Order, or an action seeking revocation of Debtors' discharge would be filed.  Ex. 111.  On August 29, 2017, Debtors counsel indicated that Debtors wanted to appeal the BAP's decision, and

MEMORANDUM OF DECISION – 8

they intended to obtain a bond to protect Trustee if the appeal was

unsuccessful.  Exs. 112, 113.

Debtors appealed the BAP's decision to the Ninth Circuit Court of

Appeals on October 10, 2017.  Bk. Dkt. No. 131.  While Debtors completed

a bond application, Ex. 116, on November 29, 2017, their application was

denied because they did not meet the necessary financial qualifications.

Ex. 202.

On November 7, 2017, Trustee filed this adversary proceeding.  Dkt.

No. 1.  While Debtors never made any payments to Trustee to satisfy the

Turnover Order, even at the trial of this action on February 27, 2018, they

continued to insist they intended to seek a stay from the Ninth Circuit.

They never did so.  On March 1, Debtors' appeal of the Turnover Order

was dismissed by the Ninth Circuit as not timely filed.  Dkt. No. 28.

### *Analysis and Disposition*

Simply put, Debtors have consistently insisted that the commissions

in question were not property of the bankruptcy estate and that turnover

of these funds was wrongly sought by Trustee and ordered by the Court.

MEMORANDUM OF DECISION – 9

While they appealed the Turnover Order, Debtors never obtained a stay of

that order from the  appellate courts while their appeals were pending,

nor did they make any payments to Trustee.  This action, and the severe

consequences explained in this decision, are the results of Debtors'

questionable conduct.

### 1.    *Applicable Law*

In a chapter 7 case, a debtor can receive a discharge of debts unless

that debtor engages in one of the acts or omissions listed in § 727(a).  In

this action, Trustee alleges that Debtors violated § 727(a)(6)(A), which

provides that a debtor may not receive a discharge if:

> (6) the debtor has refused, in the case –
>     (A) to obey any lawful order of the court,
>     other than an order to respond to a
>     material question or to testify[.]

 Here, Debtors received a discharge despite their failure to obey the

Turnover Order.  However, a trustee may request that a discharge be

revoked if the trustee proves that a debtor "committed an act specified in

subsection (a)(6) of [§ 727]."  § 727(d)(3); *Rainsdon v. Anderson (In re*

MEMORANDUM OF DECISION – 10

*Anderson)*, 526 B.R. 821, 825 (Bankr. D. Idaho 2015).

For purposes of § 727(a)(6), a bankruptcy court's order is "lawful" if the court had jurisdiction over the subject matter, and jurisdiction over the person to whom the order is directed. *Id*. at 825-26 (citing *Rainsdon v. Leiser (In re Leiser)*, 2014 WL 3548929, at *3-4 (Bankr. D. Idaho 2014)). Here, Debtors have not argued that the Turnover Order, while alleged to be erroneous, was not lawful. The Court clearly had subject matter and personal jurisdiction to order Debtors, the persons who commenced this chapter 7 bankruptcy case, to turn over their assets to Trustee for administration. *See* 28 U.S.C. § 1334(a) and § 157(a)(2)(a), (e).

"[Any] claim for denial of discharge under § 727 is construed liberally and in favor of the discharge and strictly against a person objecting to the discharge." *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986)); *United States Trustee v. Hymas (In re Hymas)*, 10.4 IBCR 114, 119 (Bankr. D. Idaho 2010) (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)). The party seeking to

MEMORANDUM OF DECISION – 11

revoke a debtor's discharge bears the burden of proof by a preponderance

of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289 (1991); *Searles v. Riley*

*(In re Searles)*, 317 B.R. 368, 376 (9th Cir. BAP 2004), *aff'd*., 212 Fed. Appx.

589 (9th Cir. 2006); *In re Anderson*, 526 B.R. at 826.  Once a trustee produces

sufficient evidence to show a basis to revoke a debtor's discharge under

§ 727(a), the burden shifts to the debtor to show why the discharge should

not be revoked. *Gugino v. Clark (In re Clark)*, 525 B.R. 442, 463 (Bankr. D.

Idaho 2015) (citing *Gugino v. Cardenas (In re Cardenas)*, 2011 WL 3510941, at

*2 (Bankr. D. Idaho Aug. 10, 2011)).

    A trustee seeking to revoke a discharge pursuant to §§ 727(d)(3) and

(a)(6)(A) must show that the debtor (a) was aware of the order; and (b)

willfully or intentionally refused to obey the order (i.e., something more

than a mere failure to obey the order through inadvertence, mistake or

inability to comply). *In re Anderson*, 526 B.R. at 826 (citing *Schwarzkopf v.*

*Goodrich (In re Michaels)*, 2009 WL 7809926, at *5 (9th Cir. BAP Feb. 27,

2009) (citing *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 434 (4th Cir.

2008))); *see also U.S. Trustee v. Lebbos (In re Lebbos)*, 439 B.R. 154, 164–65

MEMORANDUM OF DECISION – 12

(E.D. Cal. 2010), *aff'd*, 529 Fed.Appx. 854 (9th Cir. 2013) (citing *In re Jordan*, 521 F.3d at 433–434).  However, to revoke a discharge, a trustee is not required to prove that the debtor acted with malicious intent, or that the debtor set out with the design to ignore and violate the bankruptcy court's order.  *In re Clark*, 525 B.R. at 464 (citing *In re Michaels*, 2009 WL 7809926, at *7 (noting that motive is not a consideration)). In the final analysis, it is "totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge." *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985).

### 2.    *Discussion of the Issues*

Should Debtors' failure in this case to obey the Turnover Order cost them their discharge under these facts?

There is no question that Debtors were aware of the Court's Turnover Order directing them to turn over to Trustee the amount of the post-petition commissions they received.  Perhaps this is best evidenced by the fact that they appealed the entry of the Turnover Order to the BAP,

MEMORANDUM OF DECISION – 13

and after receiving an unfavorable decision there, attempted a further

appeal to the Ninth Circuit.  They also sought a stay of the Turnover

Order pending appeal from this Court and the BAP, but those requests

were denied.  As such, Debtors' awareness of the Turnover Order, and

their obligations under it, is beyond question.

Trustee must also demonstrate under § 727(a)(6) that Debtors

willfully or intentionally refused to obey the Turnover Order.  Here,

Trustee notified Debtors as early as December 2015, that he expected any

payments they received for acting as realtors in any sales pending on the

date they filed their bankruptcy petition be turned over to him.  While the

Court appreciates that Debtors disagreed with Trustee's view of the law,

and had incurred business and personal expenses in their real estate

business, it clearly appears that Debtors received and spent the disputed

commissions they received post-bankruptcy without resolving Trustee's

claims to them.  Instead, throughout the pendency of the parties' dispute,

Debtors seemingly sought to delay and stall their compliance with

Trustee's demands and the Turnover Order, instead indicating their intent

MEMORANDUM OF DECISION – 14

was to seek a stay from the BAP of the Court's unfavorable decision,

which was denied, to get to the heart of the real estate season, to seek a

loan, to close a big real estate deal, and finally, to appeal the Turnover

Order to, and supposedly to seek a stay from, the Ninth Circuit.  When all

else failed, they offered Trustee only $200 per month in payments to

satisfy the Turnover Order, a proposal that would require nearly 20 years

for them to complete.

At trial, Debtors' excuse for not at least attempting to comply with

the Turnover Order was their insistence that Trustee would accept only

the full amount due from them.  But the trial exhibits cast doubt on that

testimony, as the evidence and documentary exhibits show that,

repeatedly over more than a year, Trustee sought payment proposals from

Debtors, and eventually offered to allow them to pay half of the amount in

the Turnover Order, with the remainder due in thirty days.  Trustee

testified that he tried to accommodate Debtors' supposed plans:  to obtain

a loan, to wait for their busy sales season, to close on a large real estate

deal, and to seek a stay and bond pending appeal.  Indeed, if Trustee can

MEMORANDUM OF DECISION – 15

be criticized at all, it is perhaps that he was too patient with Debtors'

approach to simply not comply with an order that they considered

erroneously entered.  Recall, the Court issued its order in September 2016,

and Trustee did not commence this adversary proceeding until November

2017, over a year later and after giving Debtors numerous warnings about

the potential consequences of not turning over the funds.  All things

considered, the Court finds that Trustee has met his burden of showing

that Debtors willfully or intentionally refused to obey the Turnover Order.

Though Trustee satisfied his burden or proof, Debtors have not

demonstrated why their discharge should not be revoked.  At trial, they

testified about Mr. Anderson's health concerns, family challenges, and the

unpredictable nature of the real estate business.  But the proof shows that

the Bastille bank account, the source of Debtors' income during relevant

times, was often flush with cash; indeed, it held nearly $25,000 on the date

the Turnover Order was entered, and over $36,000 the following month.

Exs. 121, 122.  While the Court credits Debtors' explanation that perhaps

some of these funds were necessary to operate their business and pay their

MEMORANDUM OF DECISION – 16

salaries, this excuse falls short in light of their failure to make *any*

payments to Trustee at all.

## *Conclusion*

Debtors who avail themselves of the many benefits and protections

of chapter 7 have corresponding duties, including the obligation to

"surrender to the trustee all property of the estate."  § 521(a)(4).  Debtors in

a bankruptcy case are statutorily bound to deliver property of the estate,

and to account for such property, under § 542(a), and to "cooperate with

the trustee . . . in the administration of the bankruptcy estate.  Rule

4002(a)(4).   In this case, Debtors intentionally and willfully disregarded

their duty to obey a lawful order of this Court, presumably because they

believed it was improper.  When the evidence is viewed fairly, Trustee has

shown that Debtors were aware of the Turnover Order, and that Debtors

willfully and intentionally refused to obey it.  Debtors have not offered

adequate reasons to justify their disobedience.  Revocation of Debtors'

discharge is the appropriate consequence for their conduct.

MEMORANDUM OF DECISION – 17

Counsel for Trustee shall submit a form of judgment for entry by

the Court.  Counsel for Debtors shall approve the form of judgment.

Dated:  April 30, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 18